[Cite as *Warren Recovery Group, Inc. v. Ohio Bd. of Pharmacy*, 2026-Ohio-2663.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| WARREN RECOVERY GROUP, INC. d.b.a SHAKER FAMILY RECOVERY, | **CASE NO. 2025-T-0081** |
| Appellant, | |
| - vs - | Administrative Appeal from the Court of Common Pleas |
| THE STATE OF OHIO, OHIO BOARD OF PHARMACY, | Trial Court No. 2025 CV 00427 |
| Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: July 13, 2026
Judgment: Affirmed

*Michael J. McGee* and *James R. LaPolla*, Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481 (For Appellant).

*Andy Wilson*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215, *Henry G. Appel* and *Breeanna R. Wells*, Assistant Attorney Generals, 30 East Broad Street, 26th Floor, Columbus, OH 43215 (For Appellee).

SCOTT LYNCH, J.

{¶1} Appellant, Warren Recovery Group, Inc., appeals the denial of its administrative appeal in the Trumbull County Court of Common Pleas. Warren Recovery Group is an outpatient mental health treatment facility located in Warren, Ohio, also classified as an Office Based Opioid Treatment Program (OBOT). Warren Recovery Group treats those with mental health and addiction disorders through medical management. This appeal arose from the decision of defendant-appellee, the Ohio Board of Pharmacy, to permanently revoke its Terminal Distributor of Dangerous Drugs (TDDD)

license and impose a monetary penalty in the amount of $2,500.00. For the following reasons, we affirm the decision of the court below.

***Procedural and Substantive History***

{¶2} On February 3, 2025, an administrative hearing to take disciplinary action against Warren Recovery Group was held before the Board of Pharmacy. Agent Joseph Sidoti and Compliance Specialist Rachel Tormasi testified on behalf of the Board. Dr. Deborah Watson, Director of Behavioral Health and the Clinical Director, and D'Andre Bowers, Chief Executive Officer, the Managing Director and the Coordinator of Care, testified on behalf of Warren Recovery Group. The Board of Pharmacy summarized the hearing testimony as follows:

{¶3} On or about May 8, 2023, Board of Pharmacy agents conducted an inspection at Warren Recovery Group. At the time of the inspection, the clinic owner, Bowers, was present. The Responsible Person, Dr. J.D. LaBash, was not present. The agents noted multiple violations of the Ohio Revised and Administrative Codes.

{¶4} Warren Recovery Group was acting as a patient pick-up station for patient-specific prescriptions. The staff stated that they stored patient-specific medications in order to help patients who had transportation issues with picking up their prescriptions. When medications were not picked up by patients, these were repackaged as "facility inventory."

{¶5} Warren Recovery Group's drug stock or "inventory" was kept in a locked cabinet to which Bowers and other staff, none of whom were licensed as prescribers or pharmacists, had access. As there was no prescriber onsite during the inspection,

Bowers himself provided the agents access to the drug stock using a passcode shared with other staff.

{¶6} The cabinet contained several medications that had been repackaged as "facility inventory," including controlled substances and non-controlled dangerous drugs. All but one of the medications were expired at the time of the inspection. The cabinet contained other patient-specific medications dispensed through a local pharmacy.

{¶7} Warren Recovery Group did not complete an annual inventory of drug stock.

{¶8} One of Warren Recovery Group's employees was missing an FBI/BCI background check. Although Warren Recovery Group produced the criminal record check following the inspection, it was not present onsite at the time of the inspection.

{¶9} The Board of Pharmacy commented on the foregoing violations as follows:

> The practice violations found at the May 8, 2023 inspection were significant. Specifically, the inspection revealed medication vials that did not belong to the clinic, some of which held expired medications, that were labeled as "facility inventory." Mr. Bowers told a Board agent that the vials were labeled so they could be re-dispensed to patients. Additionally, during his testimony, Mr. Bowers insisted that – despite the observations made by the Board agent and the plain letter of the law – his clinic was in fact in compliance with the Annual Inventory for Controlled Substances requirement because he conducted weekly drug counts.

{¶10} It was discovered and documented by Board of Pharmacy agents that the TDDD license displayed in the lobby of the facility had been altered and was not the same license issued by the Board. The license identified the Responsible Person as "D'Andre Bowers, Managing Director."

{¶11} The Board of Pharmacy commented:

> Mr. Bowers testified that a staff member likely attached a copy of his signature to the TDDD license …, and it was not "incorrect" because he is the "responsible person" for Warren Recovery Group, Inc., even

Case No. 2025-T-0081

though he is not the "Responsible Person" – as the Board defines the term – for the TDDD license. The license specifically directs the Responsible Person to "[p]rint, sign, and keep this license in a readily retrievable location." It defies logic that the Board would not intend that the "responsible person" as legally defined by the Board would be the individual responsible for signing the license. Additionally, when questioned about the TDDD license, Mr. Bowers testified that the license was not improperly signed, rather it was improperly read by the agent, further demonstrating a willingness [by Bowers] to reiterate falsehoods.

{¶12} On July 6, 2023, Board of Pharmacy agents interviewed Dr. LaBash, the Responsible Person at Warren Recovery Group for the TDDD license. He told agents that he works in addiction medicine, primarily telemedicine, although he tries to be physically present at Warren Recovery Group at least once a month. Following the May 8, 2023 inspection, he no longer allows the delivery of patient-specific medications to Warren Recovery Group.

{¶13} On July 24, 2023, Board of Pharmacy agents spoke with Bowers. He represented to the agents that the medications identified during the inspection had been destroyed on May 10, 2023, and that a medication destruction form had been completed at a later date.

{¶14} On July 25, 2023, Dr. LaBash advised agents that he was not involved in the destruction of any medications following the May 8, 2023 inspection.

{¶15} On August 1, 2023, Board of Pharmacy agents, including Sidoti, went to Dr. LaBash's residence and spoke with him. Dr. LaBash advised that sometime around July 28, 2023, Bowers had brought him several bottles of pills. He put the pills in his compost bin to render them non-retrievable. When presented with the medication destruction form, Dr. LaBash acknowledged that he had initialed portions of the form but denied that the signature on the form was his.

Case No. 2025-T-0081

{¶16} Sidoti observed pills in the compost bin although their identity could not be determined. The disposing of controlled substances and non-controlled dangerous drugs in Dr. LaBash's compost bin was improper. It was also improper for these substances to have been transported to Dr. LaBash's home from Warren Recovery Group by Bowers, a non-licensed healthcare professional.

{¶17} Sidoti observed and photographed empty pill bottles in Dr. LaBash's kitchen trashcan. The bottles matched the bottles observed in the cabinet at Warren Recovery Group during the May 2023 inspection. Sidoti also observed several pill bottles that had not been noted during the inspection. These bottles or vials had been repackaged and marked as "facility inventory." The patient labels, including personally identifiable patient information, on the medication vials were still legible and, therefore, in violation of the Health Insurance Portability and Accountability Act.

{¶18} With regard to the foregoing testimony, the Board of Pharmacy concluded:

> The Board finds Mr. Bowers' testimony that the drug destruction, required by the May 8, 2023 Inspection Report, occurred on May 10, 2023, contrary to fact. Even if the Board disregards Dr. LaBash's statements made to the Board agent on July 25, 2023 and/or August 1, 2023, that he was not involved in the drug destruction or signing any forms after the May 8, 2023 inspection, and further, that the drugs were brought to his house sometime around July 28, 2023 (and rendered non-retrievable at that time), the evidence is clear. The vials found in Dr. LaBash's trash on August 1, 2023 by the Board agent – and the condition of the pills observed in the compost bin … – rebut Mr. Bowers' testimony and support the conclusion that the drugs were destroyed earlier that week. The Board finds it incredulous that drugs destroyed, and vials disposed of, in May 2023 would still be observable in Dr. LaBash's compost bin and trashcan nearly three months later. Further, regardless of whether Dr. LaBash signed the document stating that the drugs were destroyed on May 10, 2023 as Mr. Bowers contends or whether Mr. Bowers – or another agent of Warren Recovery – falsified Dr. LaBash's signature on the document, the Board concludes that the drug destruction

document was falsified or backdated to lead the Board to believe that the drugs were destroyed earlier than their actual destruction date.

{¶19} Although not cited as a violation, the Board of Pharmacy noted the following based on Bowers' hearing testimony:

> The in-hearing review of Warren Recovery Group, Inc.'s website, warrenfamilyrecovery.com, and Mr. Bowers' professional biography on the website, concerned the Board. At the time of the hearing, Mr. Bowers' biography displayed "D'Andre Bowers" with credentials below his name listing "EMT, CPhT, STNA, MA, QMHS/QBHS." Mr. Bowers' testimony regarding his professional licenses, registrations, and/or credentials was false. When asked about each credential, he testified that he either has the license or registration or that Ohio does not require the license or registration in order to qualify for each professional status. Upon further questioning, he testified he received the required training and/or the qualifications in technical school. Mr. Bowers falsely testified that emergency medical technicians (EMTs) do not require licensure or certification in Ohio. *But see* ORC Chapter 4765 (First Responders, Emergency Medical Technicians). And, despite using the CPhT (Certified Pharmacy Technician) credential on his website, Mr. Bowers acknowledged that he had applied for – but then abandoned – his application for CPhT registration with this Board. The willingness to blatantly lie to the Board – about publicly available information such as professional licensing credentials – including the Board's own registration for a CPhT – shows a clear and reckless disregard for the truth and puts his clinic clients and public at risk.

{¶20} On February 7, 2025, the Board issued its Order to permanently revoke Warren Recovery's TDDD license and impose a $2,500 monetary penalty.

{¶21} On February 18, 2025, Warren Recovery Group filed an administrative appeal in the Trumbull County Court of Common Pleas. Warren Recovery Group argued that the Board of Pharmacy's decision was not supported by reliable, probative, and substantial evidence, pointing out that the Board considered several instances of hearsay, in particular Dr. LaBash's statements to Agent Sidoti in July and August 2023. It also

Case No. 2025-T-0081

argued that the Board's decision and sentence to revoke the TDDD license and impose a fine was excessive.

{¶22} In an October 16, 2025 Judgment Entry, the trial court rejected both assignments. The court found that "the Board did consider hearsay evidence" but that "this hearsay evidence did not form the crux of the Board's decision as Warren Recovery asks this Court to find." Rather, the Board's decision emphasized Bowers's lack of credibility:

> The Board focused on Mr. Bowers' assurance that certain drugs were destroyed on May 10, 2023 as required after the Board's inspection. However, Mr. Sidoti testified that he personally observed these drugs and their containers in Dr. La[B]ash's trash in August 2023. The Board found it incredulous that these drugs would have been destroyed in May 2023 as Mr. Bowers claimed. The Board's credibility determination combined with the egregious nature of the facts and violations led to a revocation of the license and the imposition of a monetary penalty. … The Court has reviewed the evidence in the record, the transcript of the proceedings before the Board, and the Parties' briefs. The Court finds that the decision of the Ohio Board of Pharmacy to revoke Warren Recovery's TDDD license and impose a $2,500 monetary fine is supported by reliable, probative, and substantial evidence.

### Assignments of Error

{¶23} On November 13, 2025, Warren Recovery Group filed a Notice of Appeal. On appeal, it raises the following assignments of error:

> [1.] The lower court erred when it found that the Board's decision was based upon reliable, probative and substantial evidence, as such the court gave too much deference to the Board's findings and conclusions.
>
> [2.] The trial court erred when it gave complete deference to the Board's decision.
>
> [3.] The trial court erred and abused its discretion when it ruled that the Board's decision and sentence that was imposed was not against

the manifest weight of the evidence as such evidence was not supported by reliable, probative, and substantial evidence.

***Standard of Review in Administrative Appeals to the Court of Common Pleas***

{¶24} "Any party adversely affected by any order of an agency issued pursuant to an adjudication may appeal from the order of the agency to the court of common pleas of the county … in which the place of business of the licensee is located or the county in which the licensee is a resident." R.C. 119.12(A) and (B)(1). "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12(N).

{¶25} The Supreme Court of Ohio has commented on "reliable, probative, and substantial evidence" as follows: "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." (Citation omitted.) *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 39; *Capital Care Network of Toledo v. Ohio Dept. of Health*, 2018-Ohio-440, ¶ 25 ("where the agency's decision is supported by sufficient evidence and the law, the common pleas court lacks authority to review the agency's exercise of discretion, even if its decision is 'admittedly harsh'") (citation omitted).

***Standard of Review in Administrative Appeals to the Court of Appeals***

{¶26} In an administrative appeal from the trial court, "[t]he appellate court is to

Case No. 2025-T-0081

determine only if the trial court has abused its discretion." *Bartchy* at ¶ 41. It has been "recognized that a trial court abuses its discretion when its decision is 'so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" (Citation omitted.) *State v. J.B.*, 2026-Ohio-1405, ¶ 24 (Brunner, J., concurring in part and dissenting in part).

{¶27} The Supreme Court of Ohio has emphasized that "an appellate court's role is more limited than that of a trial court reviewing the same order." (Citation omitted.) *Bartchy* at ¶ 41. "It is incumbent on the trial court to examine the evidence," but "[s]uch is not the charge of the appellate court." (Citation omitted.) *Id.* "Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment." *Id.*

### First Assignment of Error: Reliance on Hearsay

{¶28} In the first assignment of error, Warren Recovery Group argues that the trial court abused its discretion in affirming the Board of Pharmacy's decision inasmuch as it relied on hearsay rather than reliable, probative, and substantial evidence. "Throughout the administrative hearing, the Board relied extensively on hearsay evidence and treated that hearsay as substantive proof of the allegations asserted. This reliance was not supported by independent, competent evidence and, because hearsay constituted the primary – if not exclusive – basis for the Board's case, it deprived Appellant of due process of law." Appellate Brief of Appellant at 6.

### Hearsay Admissible in Administrative Proceedings

{¶29} "The rules of evidence, including the hearsay rule, do not control

Case No. 2025-T-0081

administrative hearings." *HealthSouth Corp. v. Testa*, 2012-Ohio-1871, ¶ 13. "[E]vidence that would be excluded as hearsay in a civil or criminal case may be admitted and considered under the relaxed standards of administrative proceedings." *Id.* "[T]he crucial question in determining whether an administrative agency acted improperly in considering hearsay evidence is not whether such evidence was in fact considered, but whether such evidence was considered in an arbitrary fashion." *Marra v. Auburn Twp. Zoning Inspector*, 2020-Ohio-6678, ¶ 35 (11th Dist.).

{¶30} Warren Recovery Group contends, contrary to the decision of the trial court, that Dr. LaBash's statements to Agent Sidoti were "central to the Board's case." On the contrary, we agree with the trial court that these statements "did not form the crux of the Board's decision."

{¶31} First of all, a substantial number of the violations noted by the Pharmacy Board were unrelated to Dr. LaBash's statements. The following violations were sufficiently attested without recourse to statements by Dr. LaBash: the improper storage of medication accessible to unauthorized persons; the repackaging of patient-specific medicines as "facility inventory"; the failure to complete the annual inventory form; the retention of expired medication; and the alteration of the TDDD license.

{¶32} Dr. LaBash's statements were relevant to two particular violations: the falsification of the medication destruction form and the failure to destroy the medicines as required following the inspection. Although relevant to these violations, Dr. LaBash's statements were not crucial. Dr. LaBash denied that the signature on the medication destruction form that purported to be his was, in fact, his signature. Regardless of

Case No. 2025-T-0081

whether Dr. LaBash's signature was forged or not, the crucial issue is that the form falsely claimed the medicines were destroyed on May 10, 2023.

{¶33} Dr. LaBash was also reported to have stated that the medicines were delivered to his home and/or destroyed around July 28, 2023. However, Agent Sidoti's testimony that the pills remained in the compost bin and their containers in the kitchen trash on August 1 is compelling eyewitness testimony that the medicines in question were not destroyed on May 10. Given this corroboration, there was nothing arbitrary about any consideration that may have been given to Dr. LaBash's statements.

{¶34} Warren Recovery Group faults the Board of Pharmacy for not using its subpoena power to secure Dr. LaBash's presence at the hearing. We note, however, that, according to the hearing transcript, it was Bowers's decision not to require Dr. LaBash's attendance: "I didn't bring him here today because Dr. LaBash has a colonoscopy, actually, that he has to get done, so we wish him the luck with his surgery that he has going on." Queried about the possibility of Dr. LaBash rescheduling the procedure, Bowers responded: "He has to have surgery. So I was put in a position to where, what am I going to tell you – to skip surgery?"

{¶35} Finally, Warren Recovery Group objects that Agent Sidoti testified to statements made by a local pharmacist at a pharmacy that used to deliver patient-specific medications to Warren Recovery Group regarding "compliance issues." Again, we find nothing improper about the consideration of these statements. As with Dr. LaBash's statements, they were not the crux of the Board's decision. Consultation with the pharmacist was relevant because a number of the repackaged medications had originated from this pharmacy. What the specific "compliance issues" were was not

elaborated by the pharmacist. Accordingly, these statements were not crucial to the violations identified by the Board.

{¶36} The first assignment of error is without merit.

***Second Assignment of Error: Deference to the Board's Findings***

{¶37} In the second assignment of error, Warren Recovery Group argues that "the trial court afforded too much [deference] to the Board's decisions on hearsay evidence" rather than "independently review[ing] the evidence and factual record as presented." Appellate Brief of Appellant at 11.

{¶38} As regards an administrative agency's factual findings, the Supreme Court of Ohio has stated "the common pleas court must give deference to the agency's resolution of evidentiary conflicts, but 'the findings of the agency are by no means conclusive.'" (Citation omitted.) *Bartchy*, 2008-Ohio-4826, at ¶ 37. "Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate, or modify the administrative order." (Citation omitted.) *Id.* Stated otherwise, "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." (Citation omitted.) *Id.*

{¶39} In the present case, Dr. LaBash's out-of-court statements regarding his signature on the medicine destruction form and the circumstances in which the medicines were destroyed were contradicted by Bowers's testimony before the Pharmacy Board.

The Board found Bowers to be untrustworthy and largely disregarded his testimony, a fact noted by the trial court. We find no abuse of discretion. Dr. LaBash's statements were internally consistent, rested upon logical inferences, and were corroborated by Agent Sidoti's own observations and testimony. There was nothing inherently more unreliable about Dr. LaBash's out-of-court statements than there was about Bowers's testimony.

{¶40} Were it appropriate for this court to do so, we might take exception with the trial court's conclusion that "the Board did consider hearsay evidence." The Board of Pharmacy presents a convincing argument that, as the medical director for Warren Recovery Group and the site responsible person for the TDDD license, Dr. LaBash's statements do not constitute hearsay. Evid.R. 801(D)(2)(d) ("[a] statement is not hearsay if … [t]he statement is offered against a party and is … a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Warren Recovery Group counters: "At the time of the investigation, Dr. LaBash was not acting within the scope of his employment but was instead speaking with investigators in a manner calculated to build a case against Appellant." Our review, however, is circumscribed to consideration of whether the trial court's deference to the Board's findings constituted an abuse of discretion, which it did not.

{¶41} The second assignment of error is without merit.

### Third Assignment of Error: the Board's Penalty is not Excessive

{¶42} In the third assignment of error, Warren Recovery Group argues that "the Board based its far exceedingly severe decision to completely revoke the license on

hearsay evidence that was afforded improper weight, because of his inherent [un]reliability." Rather, "the Board was more worried about making a spectacle of the Director of the company, than helping a company that is beneficial to the Warren, Ohio area." Appellate Brief of Appellant at 13.

{¶43} As explained above, the purported hearsay statements were not afforded improper weight or found to be inherently unreliable.

{¶44} More fundamentally, the Supreme Court of Ohio has determined that, in the context of administrative appeals pursuant to R.C. Chapter 119, "the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion." *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraph three of the syllabus. As this Court has elaborated:

> This holding has been reaffirmed by the Ohio Supreme Court and recognized as controlling by the courts of appeal. *Dept. of Liquor Control v. Santucci*, 17 Ohio St.2d 69, 70, 246 N.E.2d 549 (1969) ("[o]f course, under the decision in the case of *Henry's Cafe* * * *, the Court of Common Pleas lacked authority to modify the penalties imposed by the commission"). "Neither a common pleas court nor an appellate court has the authority to modify a penalty imposed by a state agency unless it is unauthorized." *Raig v. Ohio Real Estate Comm*[.], 11th Dist. Portage No. 2019-P-0081, 2019-Ohio-5415, ¶ 11; *Deanru, LLC v. Ohio Liquor Control Comm.*, 10th Dist. Franklin No. 17AP-777, 2018-Ohio-2854, ¶ 12 ("[p]ursuant to [*Henry's Cafe*], we have consistently held that we lack authority to modify a penalty lawfully imposed by the commission, even where it is argued that the penalty is unduly harsh"); *Jaroscak v. Ohio Bd. of Pharmacy*, 9th Dist. Lorain No. 20CA011762, 2021-Ohio-3867, ¶ 21 ("[t]his Court previously has considered arguments [that the permanent revocation of his license is "too harsh a penalty" given his circumstances]" but concluded "we lack authority to modify or decline to follow precedent established by the Ohio Supreme Court").

*Gibbons v. Ohio State Dental Bd.*, 2022-Ohio-2463, ¶ 37 (11th Dist.).

Case No. 2025-T-0081

{¶45} In the present case, the Board of Pharmacy is expressly authorized to revoke a TDDD license and impose a monetary penalty for the violation of various statutorily enumerated provisions. R.C. 4729.57(A)(1) and (3).

{¶46} The third assignment of error is without merit.

{¶47} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, denying Warren Recovery Group's administrative appeal, is affirmed. Costs to be taxed against the appellant.

MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2025-T-0081

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Trumbull County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH


_____
PRESIDING JUDGE MATT LYNCH,
concurs


_____
JUDGE JOHN J. EKLUND,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
|---|
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2025-T-0081